## Tucker v. Commonwealth.

(Decided December 18, 1931.)

J. T. FARMER and FARMER & FARMER for appellant.

J. W. CAMMACK, Attorney General, and BASIL P. COOPER for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

Pat Tucker appeals from a judgment convicting him of grand larceny and fixing his punishment at two years' imprisonment.

The facts are these: During the latter part of October, 1930, Tucker, in company with an older negro, Tom Gilbert, left Lexington, went to the home of Louis Cook,

in Jessamine county, stole two ewes and a buck belonging to Cook, and transported them to the Bourbon stockyards in Louisville, where they were apprehended. Tucker did not deny the crime, but attributed his downfall to the influence of his companion. The only defenses interposed were that Tucker was of low mental capacity, and that the market value of sheep was less than $20.

Louis Cook, the owner of the sheep, lived on a farm about four miles from Nicholasville. He had been engaged in buying, raising, and selling sheep. Along in August next preceding the time of the theft, he bought one flock of sheep, and had also bought another flock the year before. Since that time he had not sold any sheep, but had sold some lambs. He stated that he knew the fair market value of the sheep at the time they were taken, and placed their value at $80. On cross-examination he stated that he fixed the value of the two ewes at $15 each. At that time the market had gone off some. On being asked if the average ewe was not worth $6 or $7, he stated that they were usually worth more. He also stated that some common ewes sold for as much as $20 each, and that the buck was worth $50. He further stated that the two ewes and buck were worth that much to him. He was then asked to state what was their fair market value, and not what they were worth to him. He then fixed the value of the ewes at $10 to $11 each. Cecil Embry, live stock commissioner of Louisville, testified that the sheep were sold on the market for butchering purposes, and that the ewes brought 3 cents a pound, and the buck 2 cents a pound, making a total of $13.30. He further stated that the sheep were fat, and the price obtained was the full market value of them at the time. He did not know their market value as stock ewes, or what the farmers were paying for them. Newton McConathy, a farmer who raised some sheep, testified that fairly good ewes brought from $6 to $8, depending on the quality; that a lot of them sold higher and a lot cheaper. He further testified that a good Southdown buck sold higher than ewes, and that a year before last a good Southdown buck sold from $35 to $60. The fact that the buck stolen from Mr. Cook was crippled would have something to do with its value.

It is insisted that Mr. Cook, the owner of the sheep, was not a competent witness, and hence his evidence that the market value of the sheep was greater than $20 was not sufficient either to take the case to the jury, or to

sustain the verdict. The market value of ordinary live stock is more a matter of fact than of expert opinion. Mr. Cook, who was a farmer, and had been engaged in buying, raising, and selling sheep, stated that he knew the market value of the sheep at the time they were stolen. In our opinion he was a competent witness, even though it had been some time since he had sold any sheep like those that were stolen. It is true that Mr. McConathy testified that good ewes sold for only $6 or $7 apiece, and there was other evidence that the two ewes and buck brought only $13.30 when sold for butchering purposes on the Louisville market. But it must not be overlooked that the true criterion is the market value of the property stolen at the time and place of the theft, Eaton v. Commonwealth, 235 Ky. 466, 31 S. W. (2d) 718, and not its market value for a particular purpose at a place remote from the scene of the crime. As the ewes, and particularly the buck, had a market value for stock or breeding purposes in the community at the time of the theft, it cannot be said that what they brought for butchering purposes on the open market at Louisville was so conclusive as to render the finding of the jury flagrantly against the evidence. On the contrary, it was for the jury to consider all the evidence, in the light of their common knowledge and experience, and determine whether the market value of the sheep at the time and place of the theft was $20 or less, and fix appellant's punishment accordingly.

Judgment affirmed.